**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Richmond Division**

*IN RE*: VIRGINIA DEPARTMENT
OF CORRECTIONS, Petitioner.

CASE NO. <u>3:17MC00002</u>

Related Case:
S.D. Miss.: 1:15cv1258

**<u>MEMORANDUM IN SUPPORT OF MOTION TO QUASH</u>**

Four Mississippi death row inmates have filed suit under 42 U.S.C. § 1983, alleging that

Mississippi's execution protocols violate or threaten to violate their rights under the First,

Eighth, and Fourteenth Amendments to the United States Constitution, as well as analogous

provisions of the Mississippi Constitution.[1]  The case, which has been pending in a Mississippi

federal district court for almost two years, is currently scheduled for a bench trial on May 22,

2017.

On February 9, 2017, at the request of the Plaintiffs, the Mississippi court issued a Rule

45 subpoena directed to the Virginia Department of Corrections ("VDOC"), compelling VDOC

to produce a representative to testify at a deposition under Rule 30(B)(6) of the *Federal Rules of

Civil Procedure*, and also directing compliance with a corresponding subpoena *duces tecum*.  On

February 15, 2017, the subpoena was served on VDOC.[2]

In an attempt to circumvent court involvement, VDOC provided responsive

documentation to counsel for all parties involved in the Mississippi litigation, sufficient to

---

[1] For the court's convenience, a copy of the First Amended Complaint is attached as Exhibit 1.

[2] A copy of the summons, and corresponding notice of deposition and subpoena *duces tecum*, are
attached as Exhibit 2.

describe VDOC's current lethal injection drug supplies, testing results, and recent efforts to obtain lethal-injection substances.[3]  Plaintiffs, however, presumably continue to seek information that would reveal the identity of the compounding pharmacy that supplies Virginia with its lethal injection substances—highly sensitive and privileged information that is shielded from disclosure under Virginia law.[4]  In light of the confidential nature of the information sought, the patent overbreadth of the subpoena, and the burden that would be placed upon VDOC if the Department were to fully comply with the notice of deposition and subpoena *duces tecum*, VDOC respectfully requests that this Court enter an order quashing the third-party discovery requests.

## BACKGROUND

1.      On April 16, 2015, two death-row inmates filed suit against the Commissioner of the Mississippi Department of Corrections, the Superintendent of the Mississippi State Penitentiary, the Mississippi State Executioner, and "Unknown Executioners."   Two additional death-row inmates later filed requests to intervene, which the district court granted.

2.      The complaint, as amended, "challenges the use of compounded drugs," "the use of a three-drug lethal injection procedure," and the Mississippi Department of Corrections' "intent to have the raw ingredients for pentobarbital compounded into an injectable solution on the grounds of the Mississippi State Penitentiary at Parchman, where there is no pharmacy suitable for compounding sterile drugs."

---

[3] A copy of the response, omitting the provided documents, is attached as Exhibit 3.

[4] VDOC provided documents with the understanding that, if the Mississippi Plaintiffs were not satisfied by the information contained in the documents produced, VDOC would file a motion to quash on Friday, February 24, 2017.  As of the time of this filing, counsel for VDOC has not received a response from counsel for the Mississippi Plaintiffs, with respect to the sufficiency of the documents produced.  *See* Email Correspondence, attached as Exhibit 4.

3.      In July 2015, the district court conducted an evidentiary hearing on the Plaintiffs'
motion for a preliminary injunction.  By order dated August 25, 2015, the district court granted
the motion for a preliminary injunction.  The Fifth Circuit later reversed and remanded that
order.  *See Jordan v. Fisher*, 823 F.3d 805 (5th Cir. 2016).

4.      Following issuance of the Fifth Circuit's mandate, the Mississippi district court
entered an amended and supplemental scheduling order, setting the case for trial on May 22,
2017.

5.      Having previously tried—and failed—to obtain information revealing the identity
of Missouri's execution drug suppliers,[5] the Mississippi plaintiffs have now turned to Virginia.

6.      The 30(B)(6) Notice of Deposition served upon VDOC designates the following
proposed topics for examination:

- **Topic One:**  All efforts made by VDOC from 2010 to the present to secure pentobarbital
  for use in lethal injection executions, including information regarding the names of
  individuals who were contacted and/or agreed to supply that substance;

- **Topic Two:**  All efforts made by VDOC to secure sodium pentobarbital API[6] to be
  compounded for use in lethal injection executions, including information regarding the
  names of individuals who were contacted and/or agreed to supply that substance;

- **Topic Three:**  The process, if any, by which sodium pentobarbital API has been
  compounded into injectable pentobarbital for use in lethal injection executions by VDOC
  between 2012 and the present;

---

[5] *In re Mo. Dep't of Corr.*, 839 F.3d 732 (8th Cir. 2016).

[6] "API" stands for "active pharmaceutical ingredient."

3

- **Topic Four:**  "All efforts" made by VDOC from 2010 to the present to secure midazolam for use in lethal injections, including the names and addresses of any individuals or entities who supplied that substance;

- **Topic Five:**  "All efforts" made by VDOC from 2010 to the present to secure API to be compounded into any drug other than pentobarbital;

- **Topic Six:**  "The process, if any, by which sodium pentobarbital API has been compounded into injectable pentobarbital for use in lethal injection executions,"

- **Topic Seven:**  "The process, if any, by which API has been compounded into any drug other than pentobarbital (including, but not limited to, midazolam) for use in lethal injection executions,"

- **Topic Eight:**  "The storage of lethal injection drugs by the Department from 2010 to the present,"

- **Topic Nine:**  "The procedures used by the Department from 2010 to the present to execute a convicted offender by means of lethal injection,"

- **Topic Ten:**  The process through which VDOC determined that midazolam would be used in lethal injections in Virginia;

- **Topic Eleven:**  The process, if any, through which VDOC "rejected the use of a single-drug protocol for lethal injection executions in Virginia,"

- **Topic Twelve:**  The training required for members of the execution team, including their professional certifications;

- **Topic Thirteen:**  Supply and inventory lists for execution drugs purchased from 2010 to the present;

- **Topic Fourteen:**  The actual process of lethal injection executions in Virginia;

4

- **Topic Fifteen:** Any studies into any problems encountered in lethal injection executions in Virginia;

- **Topic Sixteen:** Any communications between VDOC on the Mississippi Department of Corrections and the Mississippi Attorney General's Office regarding lethal injection executions.

    7.      The corresponding subpoena *duces tecum* requests the production of thirteen categories of documents, including the following:

- "All documents from 2010 to the present" regarding the purchase or attempted purchase of pentobarbital;

- "All documents from 2010 to the present" regarding the purchase or attempted purchase of midazolam;

- "All dug labels and package inserts for any drug purchased or obtained by the Department, from 2010 to the present, for use in lethal injection executions;"

- "All documents" relating to the decision to utilize a three-drug lethal injection protocol;

- "All documents" relating to VDOC's potential use of any drug compounded from an API for use in lethal injection executions from 2010 to the present;

- "All documents" concerning VDOC's decision to use midazolam in lethal injection executions;

- "All documents" regarding the training of the execution team, including "the names and qualifications of the persons who conducted or taught at any such training,"

- "All documents" related to the supply or inventory of lethal injection drugs from 2010 to the present;

- "All chronological logs or other documents which disclose the timing of the administration of lethal injection drugs,"

- "All documents, whether created contemporaneously with any particular execution or not, which describe or evince the actual process of each of the lethal injection executions in Virginia from January 1, 2010 to the present;"

- Any studies corresponding to "any problems encountered in any lethal injection executions in Virginia from January 1, 2010 to the present,"

- Any communications between VDOC "or any attorney for the Department," with "the corrections department or attorney general's office of any other jurisdiction" relating to the purchase of lethal injection drugs.

### ARGUMENT AND AUTHORITIES

The discovery requests served upon VDOC, a non-party to the underlying litigation, are disproportionately overbroad and would fail to disclose much—if any—information that would be relevant to a suit challenging present and future execution practices in a different jurisdiction. Moreover, the identity of the pharmacy that provides lethal-injection substances to VDOC is irrelevant to the ongoing dispute in Mississippi, and that information is shielded from disclosure under state law.  Particularly considering that the questions of whether and how VDOC obtains its lethal-injection substances, as well as the manner in which VDOC conducts executions, have already been answered through the documents VDOC provided to the Mississippi plaintiffs, VDOC should not be subjected to the burdens of any further discovery in this matter.  Finally, VDOC is entitled to the protections of the Eleventh Amendment, and cannot be compelled to produce testimony or documents for use in a federal proceeding to which it is not a party in interest.  The subpoena should be quashed.

A.    **Legal Standards**

This discovery dispute involves the intersection of Rules 26 and 45 of the *Federal Rules of Civil Procedure*.  Under Rule 45, an individual who has been subpoenaed to testify and produce documents may move to quash or modify that subpoena if it "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii) & (iv).  Material sought under Rule 45 is also subject to the more general limitations of Rule 26, which provides that parties are allowed to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  In keeping with this standard, a court may "limit the frequency or extent of discovery" if it determines that "the discovery sought is unreasonably cumulative or duplicative," that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  Also, any individual objecting to proposed discovery may move for an order limiting or preventing that discovery, in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

Accordingly, "[w]hen a nonparty objects to a Rule 45 subpoena, it may 'file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45[], seek a protective order pursuant to Fed. R. Civ. P. 26(c), or . . . object to production of documents by opposing a motion to compel . . . .'"  *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 438 (D. Md. 2012) (quoting *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002)).  The multiple procedural

mechanisms are available because, "[a]lthough Rule 45[] sets forth additional grounds on which a subpoena against a third party may be quashed, taking into consideration facts peculiar to their status as a non-party, those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26."  *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 279 F.R.D. 497, 523 (D. Md. 2010) ("[A]ll permissible discovery must be measured against the yardstick of proportionality.").

## B.  Compliance with the subpoena would disclose "privileged or other protected matter."

The notice of deposition and corresponding subpoena should be quashed under Rule 45(d)(3)(A)(iii) because they compel the production of "privileged or other protected matter," and "no exception or waiver applies."  Specifically, any documents that would reveal the identity of Virginia's lethal injection drug supplier, or the identities of members of the execution team, are protected as a matter of state law, and they are further shielded under the protections of the First Amendment.

*1.  The identities of the drug suppliers and execution team members are protected under state law.*

The Virginia General Assembly has statutorily-exempted information relating to the procurement of compounded lethal injection drugs from "discovery" in the absence of "good cause shown."  In pertinent part, Virginia Code § 53.1-234 provides as follows:

> The identities of any pharmacy or outsourcing facility that enters into a contract with the Department for the compounding of drugs necessary to carry out an execution by lethal injection, any officer or employee of such pharmacy or outsourcing facility, and any person or entity used by such pharmacy or outsourcing facility to obtain equipment or substances to facilitate the compounding of such drugs and any information reasonably calculated to lead to the identities of such persons or entities, including their names, residential and office addresses, residential and office telephone numbers, social security numbers, and tax identification numbers, *shall be confidential*, shall be exempt from the Freedom of

> Information Act (§ 2.2-3700 et seq.), *and shall not be subject to discovery or introduction as evidence in any civil proceeding unless good cause is shown*.

Va. Code § 53.1-234 (emphases added).

The identities of members of the execution team are similarly shielded from disclosure under Virginia Code § 53.1-233, which provides that

> The identities of persons designated by the Director to conduct an execution, and any information reasonably calculated to lead to the identities of such persons, including, but not limited to, their names, residential or office addresses, residential or office telephone numbers, and social security numbers, *shall be confidential*, shall be exempt from the Freedom of Information Act (§ 2.2-3700 et seq.), *and shall not be subject to discovery or introduction as evidence in any civil proceeding unless good cause is shown*.

Va. Code § 53.1-233 (emphases added).

The categories of information and documents set forth in the third-party discovery requests would encompass items falling within the scope of these state-law confidentiality provisions.  Particularly in light of the patent overbreadth of this subpoena, this Court should not indulge the Mississippi plaintiffs' fishing expedition and allow them to obtain discovery of materials the Virginia legislature has seen fit to shield from public dissemination.

> 2. *The identities of the drug suppliers and execution team members are protected under the First Amendment.*

Compliance with the third-party discovery requests served upon VDOC would breach the anonymity of the Virginia's lethal injection drug suppliers and members of the execution team. But the United States Supreme Court has "repeatedly held that compelled disclosure [of an individual's identity] in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment."  *Buckley v. Valeo*, 424 U.S. 1, 64 (1976).  There can be no doubt that the death penalty is a political issue that generates widespread public debate and

9

dissent.  Individuals who elect to participate in the execution process—whether by supplying drugs or inserting the IV lines—are exercising their constitutionally-protected right to "weigh in" on this political debate.  The very fact of their participation constitutes political speech.  These activities are no less shielded by the First Amendment than those of the picketers who might gather in protest on the night of an execution.  And the First Amendment protects their ability to engage in that protected conduct anonymously.  *See Buckley*, 525 U.S. at 199-200; *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) ("Anonymity is a shield from the tyranny of the majority."); *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 248 (4th Cir. 2009) ("The First Amendment does appear to include some aspect of anonymity in protecting free speech.").

For this reason, discovery requests that would reveal the identities of Virginia's execution drug suppliers and the members of its execution team implicate those parties' First Amendment rights.  And, where a discovery request affects First Amendment rights, the party seeking discovery must show that the information sought is related to a compelling interest that outweighs any burden on the protected rights.  *See NAACP v. Alabama*, 357 U.S. 449, 463 (1958) (vacating judgment of contempt order based on failure to disclose member identities in accordance with a court discovery order, and applying the compelling interest test).  That showing is absent here.

The practical reasons for protecting the identities of individuals participating in an execution are self-evident.  If their identities are revealed, these individuals could be faced with physical threats, acts of intimidation, harassment, and—particularly for the execution drug suppliers—economic reprisal.  *See, e.g.*, *Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015)

(discussing pressure applied to drug manufacturers by anti-death penalty advocates).[7] The Commonwealth of Virginia expressly recognized these considerations by enacting protective legislation. And once revealed, the identities of these individuals cannot be recalled. The substantial burdens that would be imposed on these parties cannot be disregarded, and those burdens weigh against any compelled disclosure. *Cf. NAACP*, 357 U.S. at 462-63 ("Petitioner has made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility. Under these circumstances, we think it apparent that compelled disclosure of petitioner's [] membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and the consequences of this exposure.").

By contrast, the Mississippi Plaintiffs lack a compelling interest in disclosure of this confidential information. The compounding pharmacy currently supplying Virginia's execution drugs only does so under the condition of "[t]otal confidentiality," which is an "essential term" of their agreement with VDOC. *Gray v. McAuliffe*, 2017 U.S. Dist. LEXIS 3606, at *21 (E.D. Va. Jan. 10, 2017). If that pharmacy's identity were to be disclosed, they would not supply execution drugs to anyone—Virginia or Mississippi. The identity of the Virginia pharmacy is, therefore, irrelevant to the Mississippi proceedings. *See, e.g., In re Mo. Dep't of Corr.*, 839 F.3d

---

[7] The safety and security issues associated with disclosure of an execution drug supplier's identity are discussed at length in the Declaration of J. Lawrence Cunningham, submitted to the Eighth Circuit in connection with litigation regarding whether these same Plaintiffs could obtain information relating to Missouri's drug suppliers. A copy of Mr. Cunningham's Declaration, and its associated exhibits, is attached as Exhibit 5, and VDOC respectfully requests that this Court consider the Declaration as evidence in support of its motion to quash.

731, 736 (8th Cir. 2016) (holding that the identity of the Missouri drug supplier was irrelevant where the supplier would "cease to provide [lethal injection drugs] to anyone . . . once its identity is disclosed").  Similarly, the identities of Virginia's execution team have no bearing on whether Mississippi adequately retains and trains the individuals who conduct executions in that jurisdiction.  *Cf. In re Lombardi*, 741 F.3d 888 (8th Cir. 2014) ("[T]he identities of the prescribing physician, pharmacist, and laboratory are plainly not relevant" to the plaintiffs' Eighth Amendment method-of-execution claims).

For these reasons, the Mississippi Plaintiffs cannot establish an identifiable interest— much less a "compelling" interest—in the disclosure of the identities of the lethal injection drug suppliers and members of the execution team.  And any interest the Mississippi Plaintiffs might have is far outweighed by the burdens that would be imposed upon the lethal injection drug suppliers and members of the execution team if their identities were revealed.

Because the identities of the drug suppliers and the execution team are protected under the First Amendment, those identities are not subject to compelled disclosure through issuance of this third-party subpoena.  VDOC therefore requests that the subpoena be quashed, in accordance with Rule 45(d)(3)(A)(iii) of the *Federal Rules of Civil Procedure*.

## C.　　Compliance with the subpoena would subject VDOC to an undue burden.

Because compliance with this subpoena would also subject VDOC to an undue burden, the subpoena should also be quashed under Rule 45(d)(3)(A)(iv).  "'Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45[] usually raises a question of the reasonableness of the subpoena, an analysis that requires 'weighing a subpoena's benefits and burdens' and 'consider[ing] whether the information is necessary and whether it is available from any other source.'"  *Maxtena*, 289 F.R.D. at 438 (quoting 9A CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2463.1 (3d ed. 2008)).  Undue burden

may therefore "be established by proving irrelevance or overbreadth."  *In re*

*ThompsonMcMullan, P.C.*, No. 3:16-MC-1, 2016 U.S. Dist. LEXIS 35172, at *10 n.1 (E.D. Va.

Mar. 17, 2016).  A court should quash "any subpoena that seeks evidence that is neither relevant

nor reasonably calculated to lead to the discovery of admissible evidence, or that is so overbroad

that compliance with its demands will necessarily require production of irrelevant evidence."  *Id.*

at *15.  "Such a subpoena creates an undue burden because it necessarily imposes greater

hardship than is necessary to obtain proper discovery," and thereby exceeds the "scope

limitations of Rule 26," which "apply to all methods for obtaining discovery."  *Id.*  Overall, to

survive a motion to quash, a third-party subpoena must be "narrowly crafted to relevant subject

matter in the underlying litigation."  *Id.* at *18 n.6.

      The subpoena and notice of deposition served upon VDOC are overbroad.  They seek

information regarding VDOC's lethal injection drug supply and processes for a period dating

back to 2010.  Evidence regarding VDOC's lethal injection drug supply, dating back seven

years, has no reasonable relationship to the question of whether VDOC is presently able to obtain

certain lethal injection substances, and it has no reasonable relationship to the more pertinent

question—whether *Mississippi* is presently able to obtain certain lethal injection substances.

The breadth of the subpoena far exceeds the question to be addressed in that litigation—

specifically, what lethal injection drugs are *currently* "available" for use in an execution by lethal

injection.

      Moreover, any documents that might bear on this point—for example, copies of the drug

labels for Virginia's current supply of lethal injection drugs, as well as a redacted copy of

Virginia's execution manual—have already been supplied to the Mississippi Plaintiffs.[8]

Detailed information about Virginia's execution methodologies and drug supplies are also set

forth in recent and publicly-available decisions of this Court. *See Gray v. McAuliffe*, 2017 U.S.

Dist. LEXIS 3606 (E.D. Va. Jan. 10, 2017); *Prieto v. Clarke*, No. 3:15cv587, 2015 U.S. Dist.

LEXIS 134622 (E.D. Va. Oct. 1, 2015); *see also Emmett v. Johnson*, 532 F.3d 291 (4th Cir.

2008); *Walker v. Johnson*, 448 F. Supp. 2d 719 (E.D. Va. 2006), *aff'd*, 328 Fed. App'x 237 (4th

Cir. 2009); *Lenz v. Johnson*, 443 F. Supp. 2d 785 (E.D. Va. 2006); *Vinson v. Johnson*, No.

3:06cv230, 2006 U.S. Dist. LEXIS 59527 (E.D. Va. Apr. 19, 2006); *Reid v. Johnson*, 333 F.

Supp. 2d 543 (E.D. Va. 2004).

 In light of these considerations, the third-party discovery requests seek information that is

not relevant to the Mississippi proceedings, and they are not "narrowly crafted to relevant subject

matter in the underlying litigation." *ThompsonMcMullan, P.C.*, 2016 U.S. Dist. LEXIS 35172,

at *18 n.6. They constitute, rather, the quintessential fishing expedition. Compliance with the

third-party discovery would, therefore, subject VDOC to an undue burden.

 VDOC further notes that, with respect to the specific question regarding the identities of

lethal injection drug suppliers and members of the execution team, revelation of that information

would impose an additional burden on the Department that is unwarranted, particularly in this

third-party context. The Commonwealth of Virginia is scheduled to execute Ivan Teleguz on

April 25, 2017. This week, the United States Supreme Court denied a petition for certiorari with

respect to the habeas appeal of another Virginia death-row inmate, William Morva (Case No. 16-

589). Considering the fact that one execution is imminent, and another on the immediate

horizon, VDOC should not be compelled to disclose information that would likely frustrate its

---

[8] *See* Exhibit 3.

ability to carry out those pending court orders of execution.  *See, e.g., Fears v. Kasich*, 845 F.3d 231 (6th Cir. 2016) (affirming protective order issued under Rule 26(c) to shield identities of Ohio's execution drug suppliers, reasoning that the state had a legitimate interest in conducting executions and taking judicial note of "the logical consequence of drug manufacturers ceasing to cooperate with Ohio").

As this Court has observed, "subpoenas must impose parameters limiting the subpoena's scope to evidence relevant in the underlying litigation.  Without such parameters, the subpoena is overbroad or seeks irrelevant information, and imposes an undue burden."  *In re ThompsonMcMullan, P.C.*, 2016 U.S. Dist. LEXIS 35172, at *18.  Permitting this Rule 45 subpoena to stand "would ignore the rule of proportionality that must be considered in determining the proper scope of discovery."  *Maxtena*, 289 F.R.D. at 435.  Because the subpoena and notice of deposition would encompass a plethora of information that is irrelevant to the pending Mississippi suit, and because it is not narrowly tailored to the subject matter of that litigation, compliance with the third-party discovery requests would pose an undue burden on VDOC.  The Rule 45 subpoena should, therefore, be quashed.

**D.**  **Compliance with the subpoena would subject Virginia's compounding pharmacy and execution team members to an undue burden.**

Apart from the burden that would be imposed upon VDOC, the subpoena should also be quashed because it would pose an undue burden on the lethal injection drug suppliers and members of the execution team—entities that are also non-parties to the Mississippi litigation. As discussed in Part B, *supra*, valid safety concerns underlie the state's decision to shield these identities from public disclosure.  *See, e.g.*, Exhibit 5, Cunningham Decl., at 29-30 ("I conclude . . . that withholding from public disclosure the identities of persons engaged in the manufacture, supply and distribution of compounding drugs used to carry out executions is necessary to insure

their safety and security against physical harm or harassment, " and "there is a significant and substantial threat of physical harm to the compounding company/pharmacy . . . if the identity of the compounding company/pharmacy or pharmacist is publicly disclosed").  Virginia's compounding pharmacy, and the members of its execution team, agreed to act in those roles under the reasonable, statutorily-guaranteed expectation that their identities would be kept confidential.  That expectation should not be trumped by the Mississippi Plaintiffs' request for information that is irrelevant to their Eighth Amendment claims.

Considering the overall irrelevance of this information to the Mississippi litigation, disclosure of documents or other information that would reveal the identities of Virginia's lethal injection drug supplier and execution team would subject these private parties to an undue burden.  This burden poses an additional justification for quashing the subpoena under Rule 45(d)(3)(A)(iv) of the *Federal Rules of Civil Procedure*.

**E.**     **VDOC is entitled to the protections of the Eleventh Amendment.**

The Eleventh Amendment of the United States Constitution provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend XI.  In this manner, the Eleventh Amendment protects the "integrity retained by each state in our federal system," *Hess v. Port Authority Trans-Hudson Co.*, 513 U.S. 30, 39 (1994), and "its command cannot be disregarded," *Booth v. Maryland*, 112 F.3d 139, 143 (4th Cir. 1997).

The "ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. Ala. v. Garrett*, 31 U.S. 356, 363 (2001).  The Commonwealth of Virginia has not consented to be sued, in

Mississippi federal court or any other federal court, with respect to its execution methodologies or lethal injection drug supply.[9]  Nor has it consented to comply with subpoenas issued on behalf of non-Virginia Plaintiffs in a suit filed in a non-Virginia federal court.  For this reason, the Commonwealth—and, by extension, VDOC—are entitled to the protections of the Eleventh Amendment.  *See generally Ex Parte Ayers*, 123 U.S. 443, 505 (1887) ("The very object and purpose of the Eleventh Amendment was to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the insistence of private parties.").

As the Fourth Circuit has recognized, "the nature of the subpoena proceeding against a [government] employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the [government]." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989).  Any enforcement proceedings therefore "fall within the protection of sovereign immunity." *Id.* at 71; *see also COMSAT Corp. v. NSF*, 190 F.3d 269, 278 (4th Cir. 1999) ("[I]f the non-party recipient of a subpoena is a government agency, principles of sovereign immunity apply.").[10]

Although *Boron Oil Co.* was decided in the context of a subpoena directed to a federal official, similar logic applies here.  A federal court has issued judicial process against a non-party state government, in a suit filed by citizens of a different state.  This directly implicates the

---

[9] Although 42 U.S.C. § 1983 provides litigants with a mechanism for seeking redress of their civil rights, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, "[i]t is now well settled that a state cannot be sued under § 1983." *See, e.g.*, *Kelly v. Maryland*, 267 Fed. App'x 209, 210 (4th Cir. 2008) (per curiam).  Neither can a state agency.  *See, e.g.*, *Dingess v. Va. Dep't of Corr.*, No. 7:12cv00630, 2012 U.S. Dist. LEXIS 182920, at *3 (W.D. Va. Dec. 31, 2012) ("[T]he Virginia Department of Corrections . . . is not an entity subject to suit in an action for damages under § 1983.").

[10] *Cf. United States v. Procter*, 356 U.S. 677, 681 (1958) ("The Government *as a litigant* is, of course, subject to the rules of discovery." (emphasis added)).

Eleventh Amendment:  "[T]he judicial power of the United States *shall not* be construed to [permit suit] against one of the United States by Citizens of another State."  U.S. CONST. amend XI. (emphasis added).  Because a federal subpoena constitutes initiation of a federal judicial process, that subpoena cannot, consistent with the Eleventh Amendment, compel the compliance of a non-party, non-consenting state or state agency.  *See, e.g.*, *United States v. Bailey*, 228 F.3d 341, 348 (4th Cir. 2000) (noting that the issuance of a subpoena "initiates an adversary process that can command the production of documents and things *only after judicial process is afforded*" (emphasis in original)).

For these reasons, the Rule 45 subpoena issued by the Mississippi federal court contravenes the protections of the Eleventh Amendment.  And because VDOC is entitled to immunity from that process, the subpoena and corresponding notice of deposition should be quashed.

## CONCLUSION

Although the federal rules permit liberal discovery, "[i]t is clear from experience that pretrial discovery by depositions . . . has a significant potential for abuse."  *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 34 (1984).  "This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties."  *Id.* at 34-35.  This is just such a case.  The Rule 45 subpoena served upon VDOC, a non-party to the underlying litigation, would compel the agency to comply with discovery requests that are overbroad, not narrowly tailored to the subject matter of that dispute, require the production of irrelevant information, and would disclose identities that are privileged as a matter of state and federal constitutional law.  Compliance with the discovery requests would pose an undue burden on VDOC, Virginia's lethal injection drug suppliers, and members of the execution team.

Moreover, the Rule 45 subpoena itself impermissibly invades the constitutionally-guaranteed Eleventh Amendment immunity of the state.

For these reasons, VDOC respectfully requests that this Court GRANT the motion to quash.

Respectfully submitted,

VIRGINIA DEPARTMENT OF CORRECTIONS, Petitioner.

By: _____/s/_____
Margaret Hoehl O'Shea, AAG, VSB #66611
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of February, 2017, I electronically filed the

foregoing Memorandum in Support of Motion to Quash with the Clerk of the Court using the

CM/ECF system, which will send a notification of such filing (NEF) to the following: N/A,

And I hereby certify that I will mail, by electronic and U.S. mail, this document to the

following non-filing users:

**COUNSEL FOR PLAINTIFFS:**
James W. Craig (MSB #7798)
Emily M. Washington (pro hac vice)
The Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA  70119
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org

**COUNSEL FOR DEFENDANTS:**
Jason L. Davis
Paul E. Barnes
Wilson D. Minor
Mississippi Office of the Attorney General
P.O. Box 220
Jackson, MS  39205
jdavi@ago.state.ms.us
pbarn@ago.state.ms.us
wmino@ago.state.ms.us

**COUNSEL FOR INTERVENOR PLAINTIFF THOMAS E. LODEN, JR.:**
Stacy L. Ferraro
239 N. Lamar Street, Suite 604
Jackson, MS  39201
lifestoryms@gmail.com

Merrida P. Coxwell, Jr.
Coxwell & Associates, PLLC
500 North State Street
Jackson, MS  39201
merridac@coxwelllaw.com

**COUNSEL FOR INTERVENOR PLAINTIFF ROGER THORSON:**
James L. Davis, III

P.O. Box 1839
Gulfport, MS  39502
JamesLDavisIII@aol.com

Nicolas F. Aldrich (pro hac vice)
1211 SW Fifth Avenue, Suite 1900
Portland, OR  97204
naldrich@schwabe.com

**COUNSEL FOR INTERVENOR PLAINTIFF ROBERT SIMON:**
Sibyl C. Byrd
MCDUFF & BYRD
767 North Congress Street
Jackson, MS  39202
scb@mcdufflaw.com

_____/s/_____
Margaret Hoehl O'Shea
Assistant Attorney General
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us
